UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :

PROCAPS, L.P. (f/k/a Paintball L.P.),        :      07 CV 6208 (LAP)

                    Petitioner,                            :

                         v.                              :

PBS HOLDING GROUP, INC. (f/k/a National  :
Paintball Supply, Inc.),

                    Respondent.                   :
------------------------------------------------------------X

**ANSWER OF RESPONDENT, PBS HOLDING GROUP, INC., TO PETITION TO VACATE ARBITRATION AWARD AND CROSS-PETITION OF PBS HOLDING GROUP, INC. TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT**

Respondent/Cross-Petitioner, PBS Holding Group, Inc. (f/k/a National Paintball Supply, Inc.) ("NPS"), by its attorneys, Duane Morris LLP, respectfully submits the following Answer to the Petition to Vacate Arbitration Award filed by Procaps, L.P. ("Procaps") and Cross-Petition to Confirm Arbitration Award and Enter Judgment against Procaps, and states in support thereof as follows:

**I. ANSWER TO PETITION TO VACATE ARBITRATION AWARD**

1. Admitted in part, denied in part. It is admitted only that Procaps' Petition to Vacate Arbitration Award (the "Petition") arises from the arbitration of a dispute concerning a Product Supply Agreement, dated September 20, 2004 (the "Paintball Contract"), and an Exclusive Distributor Agreement. The Exclusive Distributor Agreement was thereafter modified by a Confirmation of Contract Terms. The Exclusive Distributor Agreement and the Confirmation of Contract Terms are hereinafter collectively referred to as the "Goggles Contract". It is further admitted that the Paintball Contract and the Goggles Contract

(collectively referred to herein as the "Contracts") contained certain exclusivity requirements and distribution terms. It is denied that the date of the Goggles Contract was September 20, 2004. Rather, the Exclusive Distributor Agreement was dated June 12, 2002. The Confirmation of Contract Terms was dated September 20, 2004.

2. Admitted in part, denied in part. It is admitted only that pursuant to the arbitration clauses in the Contracts, the parties arbitrated various disputes relating to whether Procaps wrongfully terminated the Contracts. It is denied that the parties arbitrated disputes relating to whether Procaps' predecessors wrongfully terminated the Contracts. At the time when Procaps terminated the Contracts, Procaps' predecessors were no longer parties to the Contracts, having assigned all of their respective rights and obligations under the Contracts to Procaps.

3. Admitted.

4. Denied. The arbitrators did not ignore the liquidated damages clause in the Paintball Contract in manifest disregard of the law or in excess of the arbitrators' authority. Rather, in reaching their Final Award, the arbitrators followed the governing legal principle that liquidated damages provisions are enforceable only if the amount of damages fixed is a "reasonable forecast of just compensation for the harm that is caused by the breach." Here, the arbitrators properly concluded that the amount of damages fixed in the liquidated damages provision of the Paintball Contract was not a reasonable forecast of just compensation for the harm suffered by NPS as a result of Procaps' wrongful termination of the Paintball Contract.

5. Denied. NPS' financial statements did not "fraudulently [mis]represent[] [NPS'] business success." Moreover, in all events, the claimed "fraudulent" aspects of NPS' financial statements did not form the basis for NPS' damages expert's lost profits calculations. NPS is

without knowledge or information sufficient to form a belief as to the truth of the allegations concerning when Procaps was "informed" of the allegedly fraudulent aspects of NPS' financial statements and, therefore, Procaps' allegations in this regard are denied.

    6.    Admitted.

    7.    Admitted.

    8.    Admitted.

    9.    Admitted.

    10.    Admitted.

    11.    Admitted in part, denied in part. It is admitted only that on September 20, 2004, NPS and Procaps Encapsulation, Inc. entered into the Paintball Contract, and that NPS and AirTech Industries, Inc. entered into the Goggles Contract. It is denied that the date of the Exclusive Distributor Agreement was September 20, 2004.

    12.    Admitted.

    13.    Admitted in part, denied in part. It is admitted only that paragraph 8.05 of the Paintball Contract contained a so-called "liquidated damages" clause. It is denied that paragraph 8.05 of the Paintball Contract limited the damages which NPS was entitled to recover on account of a material breach by Procaps. To the contrary, the arbitrators properly concluded that paragraph 8.05 of the Paintball Contract did not reasonably forecast fair compensation for the harm caused to NPS by Procaps' wrongful termination of the Paintball Contract and, therefore, paragraph 8.05 did not limit the damages which NPS was entitled to recover on account of Procaps' wrongful termination of the Paintball Contract. It is further denied that the confidentiality agreement entered into by the parties in the arbitration precludes the attachment of the Paintball Contract to the pleadings in this action.

14. Denied. Procaps has mischaracterized the content of paragraph 8.06 of the Paintball Contract by omitting the remainder of that paragraph, which states a number of exceptions to the provision that "the remedies set forth in this Section 8 shall be the sole and exclusive remedy" for breach of the Paintball Contract.

15. Admitted.

16. Admitted.

17. Admitted in part, denied in part. It is admitted only that the parties participated in an arbitration hearing. NPS is without knowledge or information sufficient to form a belief as to the truth of Procaps' allegation that the arbitration panel was "affiliated" with the International Centre for Dispute Resolution Commercial Arbitration Tribunal (the "ICDR") and, therefore, Procaps' allegation in this regard is denied. By way of further answer, the ICDR is a division of the American Arbitration Association ("AAA"). Pursuant to the ICDR Arbitration Rules, a single arbitrator or a panel of arbitrators is selected pursuant to the terms of the parties' arbitration agreement(s). Here, each of the three arbitrators selected by the parties to arbitrate their disputes was an attorney in private practice whose only "affiliation" with the ICDR, upon information and belief, was that his name and resume was maintained by the ICDR on its roster of prospective arbitrators.

18. Admitted.

19. Admitted in part, denied in part. It is admitted only that the arbitrators concluded that, as a result of Procaps' wrongful termination of the Contracts, NPS had suffered $5,225,000 in lost profits related to paintballs, $1,687,218 in lost profits related to goggles, $5,231,427 in lost profits related to other products, and $3,025,444 in margin erosion damages. It is denied that the entirety of the arbitrators' award to NPS was based on NPS' claim of lost profits. To the

contrary, the Final Arbitration Award (the "Final Award") in NPS' favor and against Procaps was based on the arbitrators' factual findings and legal conclusions with respect to the disputes between the parties. It is further denied that the entirety of the arbitrators' monetary award in favor of NPS was based entirely on NPS' claim for lost profits. To the contrary, a portion of the damages awarded to NPS by the arbitrators was attributable to NPS' claim for margin erosion, and a portion of the damages awarded to NPS was for lost interest for the period from June 1, 2006 through May 1, 2007.

20. Denied. The arbitrators properly concluded that, as a matter of law, under the pertinent facts and circumstances, there was no "cap" on the amount of lost profits NPS was entitled to recover as a result of Procaps' wrongful termination of the Paintball Contract.

21. Denied. The arbitrators did not exceed their authority. Rather, the arbitrators had the discretion to determine, and did determine, that under the pertinent facts and circumstances the liquidated damages provision in the Paintball Contract did not reasonably forecast fair compensation for the harm caused to NPS by Procaps' wrongful termination of the Paintball Contract.

22. Admitted in part, denied in part. It is admitted only that KEE Action Sports Holdings, Inc., KEE Action Sports, LLC, KEE Action Sports I, LLC, and KEE Action Sports 1 UK, Ltd. (collectively referred to herein as "KEE") purchased substantially all of the assets of NPS, and that KEE subsequently filed suit against NPS in the Superior Court for the State of Delaware (the "Delaware Action") in which KEE alleged the existence of certain misrepresentations contained in certain of the financial statements of NPS. It is denied that the financial statements at issue in the Delaware Action contained fraudulent information.

23.     Denied.  The arbitrators did not rely on any of NPS' financial statements in reaching their Final Award, and certainly did not rely on the "same" financial statements of NPS that KEE alleges in the Delaware Action contained certain claimed misrepresentations.  Rather, the arbitrators found that the methodology used by NPS' damages expert in calculating NPS' damages was appropriate, and the arbitrators established the appropriate time period within which to measure NPS' damages.  By way of further answer, in reaching his opinions, NPS' damages expert relied on his review of the relevant books and records of NPS, not on any one particular set of NPS' financial statements, and certainly did not rely on the portions of NPS' financial statements that KEE alleges in the Delaware Action contained certain misrepresentations.

24.     Admitted in part, denied in part.  It is admitted only that the arbitrators found that NPS' damages expert's opinions were based primarily on reliable business records generated and maintained by NPS in the ordinary course of its business.  It is denied that the arbitrators' finding that NPS' damages expert's opinions were based primarily on reliable business records generated and maintained by NPS in the ordinary course of its business was the sole reason why the arbitrators relied on NPS' damages expert's lost profits calculations.

25.     Admitted in part, denied in part.  It is admitted only that KEE alleges in the Delaware Action that NPS' financial statements included certain intentional misrepresentations regarding certain product inventories and undisclosed liabilities.  It is further admitted that KEE seeks damages in the Delaware Action in excess of $11 million.  It is denied that NPS' financial statements included any intentional misrepresentations regarding product inventories and undisclosed liabilities.  It is further denied that KEE has suffered any damages giving rise to a claim for relief against NPS.

DM1\1181518.3

26.     Denied.  NPS' financial statements were not fraudulent.  Moreover, the arbitrators did not rely on any of NPS' financial statements in reaching their Final Award, and certainly did not rely on the "same" financial statements of NPS that KEE alleges in the Delaware Lawsuit contained certain misrepresentations.

27.     Denied.  The Final Award must be confirmed because Procaps has not demonstrated that NPS engaged in fraudulent activity, or if such fraudulent activity is shown (which NPS denies) that the claimed "fraud" was material to an issue in dispute during the arbitration, or that the claimed "fraud" could not have been discovered before or during the arbitration proceeding through the exercise of due diligence.

WHEREFORE, NPS respectfully requests that this Court deny Procaps' Petition to Vacate the Final Award rendered against Procaps on April 26, 2007, confirm the Final Award, and enter the Final Award as a judgment in its favor and against Procaps as follows:

    a.    Judgment in favor of PBS Holding Group, Inc. (f/k/a National Paintball Supply, Inc.) and against Procaps, L.P. (f/k/a Paintball, L.P.) in the amount of $9,674,443.46 plus simple annual interest at the rate of 9% on any unpaid portion of that amount from June 1, 2007 until paid in full, as set forth in the Final Arbitration Award dated April 26, 2007;

    b.    An award of the attorneys' fees and costs incurred by Respondent in connection with this Answer and Cross-Petition;

    c.    Post-judgment interest on the above amounts; and

    d.    Such other relief as the Court may deem appropriate.

## II. CROSS-PETITION TO CONFIRM ARBITRATION AWARD

28.     NPS incorporates by reference the averments in its Answer to Procaps' Petition to Confirm Arbitration Award, with the same force and effect as if set forth in full below.

29. By its Cross-Petition, NPS seeks confirmation of, and the entry of judgment on, the Final Award in NPS' favor and against Procaps.  See Affidavit of Lawrence H. Pockers ("Pockers Aff."), filed contemporaneously herewith, at Exh. "A".

30. Because the underlying arbitration involved distribution contracts contemplating partial performance in Canada, confirmation of the Final Award is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), which is codified in the Federal Arbitration Act ("FAA") at 9 U.S.C. § 201 and implemented at 9 U.S.C. §§ 201-208.

31. This Court has original jurisdiction over the subject matter of NPS' Cross-Petition pursuant to 9 U.S.C. § 203, which provides that an action or proceeding falling under the New York Convention "shall be deemed to arise under the laws and treaties of the United States."

32. Venue is proper in this jurisdiction pursuant to 9 U.S.C. § 204 because the Final Award was deemed to have been made in New York, New York, as Procaps has conceded.

33. NPS' Cross-Petition is timely made pursuant to 9 U.S.C. § 207 because the Cross-Petition is being filed within three years of the date when the Final Award was made, April 26, 2007.

34. At all relevant times, NPS was a paintball game supply and distribution company headquartered in Sewell, New Jersey, which dealt in various types of paintball equipment, including numerous brands of markers and paintballs as well as goggles, air systems, loaders, parts, and apparel.  See Pockers Aff. at Exh. "A", p. 2.  "Paintball" is a competitive game in which players use gas-powered markers (similar to air guns) to launch at each other marble-sized dye-filled gelatinous capsules (also known as "paintballs").  The purpose of the game is to eliminate players on the opposing team by striking them with a paintball.  Id. at p. 1.

35. On June 12, 2002, NPS and AirTech Industries, Inc. ("AirTech"), a Canadian company, entered into an Exclusive Distributor Agreement under which NPS obtained exclusive distribution rights with respect to certain goggles manufactured by AirTech. See Pockers Aff. at Exh. "K". The Exclusive Distributor Agreement was subsequently amended by a Confirmation of Contract Terms dated September 20, 2004. See Pockers Aff. at Exh. "L". The June 12, 2002 Exclusive Distributor Agreement and the September 20, 2004 Confirmation of Contract Terms are hereinafter collectively referred to as the "Goggles Contract".

36. On September 20, 2004, NPS and Procaps Encapsulation, Inc. ("PEI"), another Canadian company, entered into a Product Supply Agreement under which NPS obtained exclusive distribution rights with respect to certain paintballs manufactured by PEI (the "Paintball Contract"). See Pockers Aff. at Exh. "M". The Goggles Contract and the Paintball Contract are hereinafter collectively referred to as the "Contracts".

37. Effective February 25, 2005, all rights, title and interest in the Contracts were assigned from PEI and AirTech, respectively, to Procaps, L.P. (f/k/a Paintball, L.P.), a limited partnership organized under the laws of Ontario, Canada, and the Petitioner herein. See Pockers Aff. at Exh. "N". The effect of the assignment was that, going forward, Procaps now stood in the shoes of PEI and AirTech with respect to the subject matter of the Contracts. See Pockers Aff. at Exh. "N".

38. Procaps then breached the Contracts by, inter alia, prematurely and improperly terminating the Contracts in June 2005, purportedly on the basis of two uncured default notices that Procaps had mailed to NPS on May 17, 2005.

39. Pursuant to the identical arbitration provisions in the Contracts, NPS instituted an arbitration proceeding against Procaps on June 21, 2005 by filing a Demand for Arbitration with

DM1\1181518.3

the American Arbitration Association ("AAA").  See Pockers Aff. at Exh. "B".  Because the dispute submitted for arbitration involved a domestic company and a Canadian company, the AAA, pursuant to its internal rules, administered the case through its International Centre for Dispute Resolution ("ICDR").  On July 8, 2005, NPS filed an Amended Demand for Arbitration.  See Pockers Aff. at Exh. "C".  That same day, NPS also commenced a separate arbitration against Procaps by filing a Demand for Arbitration with the AAA.  See Pockers Aff. at Exh D.  The two arbitrations were later consolidated.  On August 11, 2005, Procaps filed its Response and Counterclaim to the Demands for Arbitration made by NPS.  See Pockers Aff. at Exh. "E".

40. Ultimately, John H. Wilkinson, Esquire of Fulton Rowe Hart & Coon in New York, New York, William A. Zucker, Esquire of McCarter & English in Boston, Massachusetts and David L. Evans, Esquire of Hanify & King in Boston, Massachusetts, were selected by the parties and appointed by the ICDR to preside as arbitrators over all aspects of the arbitration proceeding.

41. Arbitration hearings were held on March 20 through 24, on September 5 through 8, and September 25 through 29, and on November 2 and 3, 2006.  At the hearings, the parties were present and were represented by counsel.  Procaps was represented at various stages of the arbitration hearings by Jon A. Baughman, Esquire, Francis P. Devine, III, Esquire and/or Nicole D. Galli, Esquire, among others, of the law firm of Pepper Hamilton LLP.  The parties were given a full opportunity to present, and did present, evidence, witnesses, and arguments.  In all, testimony from 15 different witnesses, including three expert witnesses, was presented at the hearings, and the testimony of five additional witnesses was presented to the arbitrators by way of deposition designation or stipulated testimony.

DM1\1181518.3

42.     Following the close of the evidence, and after extensive post-trial submissions by the parties (see Pockers Aff. at Exhs. "F", "G", "H" and "I"), on April 26, 2007, the arbitrators issued a 38-page "Final Arbitration Award" (the "Final Award") containing a detailed factual and legal analysis of the dispute between the parties.  See Pockers Aff. at Exh. "A".  In the Final Award, the arbitrators found in favor of NPS with regard to several legal issues, and in Procaps' favor with regard to certain other legal issues.  The Final Award was deemed to have been made in New York, New York.

43.     Specifically, the arbitrators found that there had been binding contracts between the parties, that Procaps breached those contracts, that Procaps had no valid defenses and that NPS, as a result of Procaps' breaches, had suffered significant injury in the form of lost profits. In pertinent part, the arbitrators found:

> "NPS timely and effectively cured the defaults covered by the May 17, 2005 default notices." Id. at p. 19.

> "Procaps had no right to terminate the Contracts as a result of any arrearages that may have arisen on or after June 23, 2005." Id. at p. 20.

> "[T]here was a waiver of the 45 day payment provision of the Contracts up to the time of the May 17, 2005 default notices.  That being so, there was no payment default as of the date of those notices and, accordingly, the notices provided no basis for Procaps' purported termination of the Contracts." Id. at p. 22.

> "Procaps never served NPS with an effective demand for [adequate] assurances within the meaning of the [Uniform Commercial Code] or the Contracts." Id. at p. 24.

> "NPS clearly owes Procaps in the vicinity of $5 million for product it purchased and received but for which it never paid.  According to Procaps' records, the amount is $5,016,386 and according to NPS' records, the amount is $4,910,681. For purposes of the Counterclaim, the Panel finds Procaps' number to be more reliable and, accordingly, it awards Procaps $5,016,386 on its Counterclaim for the account balance due to it." Id. at p. 29.

> "On its claim for wrongful termination [of the Contracts, NPS] is awarded . . . $15,169,089." Id. at p. 35.

44.     In addition to rejecting NPS' defenses to Procaps' Counterclaim, and awarding Procaps the full amount of the damages it sought on its Counterclaim, the arbitrators also ruled against NPS on a number of other legal issues.  For example, the arbitrators rejected NPS' claim for "market" and "cover" damages under the Uniform Commercial Code ("UCC").  Id. at p. 34.  As a result, the arbitrators did not award NPS an additional $15 million that NPS had sought to recover.  Id.; See also Pockers Aff. at Exh. "F", p. 88.  In addition, NPS had sought damages for the entire term of the Contracts.  Specifically, NPS had sought six years of lost profits on account of Procaps' unlawful termination of the Paintball Contract, and four years of lost profits on account of Procaps' unlawful termination of the Goggles Contract.  Instead, the arbitrators limited NPS' damages to a period of approximately two and a half years from a date shortly after Procaps' unlawful termination of the Contracts.  Id. at p. 33.  As a result, the arbitrators did not award NPS an additional $6 million in damages NPS had sought to recover.  See Pockers Aff. at Exh. "F", pp. 87-88.  Furthermore, the arbitrators refused to award NPS an additional $2 million NPS had sought to recover on account of Procaps' violations of the "best pricing" provisions of the Paintball Contract.  See Pockers Aff. at Exh. "A", pp. 24-27; Exh. "F", pp. 88-91.

45.     The arbitrators "netted" the amounts to be awarded to NPS and Procaps, respectively, and thus ordered that Procaps make a single payment to NPS in the amount of $9,674,443.46, plus simple annual interest at the rate of 9% on any unpaid portion of that amount from June 1, 2007 until paid in full.  See Pockers Aff. at Exh. "A", p. 36.  The Final Award has not been corrected, vacated, set aside, suspended or modified.  Procaps has not yet complied, in whole or even in part, with the Final Award.

46.     Under the New York Convention (as implemented by the FAA), a court *shall* confirm a non-domestic award unless one of a limited number of narrow exceptions applies.  For

all of the reasons set forth in the accompanying Memorandum of Law, the Final Award must be confirmed, and Procaps' Petition must be denied, because none of the exceptions set forth in the New York Convention or in the FAA, including the two exceptions advanced by Procaps as grounds for vacating the Final Award, is applicable.

WHEREFORE, NPS respectfully requests that this Court confirm the Final Award rendered against Procaps on April 26, 2007, deny Procaps' Petition to Vacate the same, and enter the Final Award as a judgment against Procaps as follows:

a. Judgment in favor of PBS Holding Group, Inc. (f/k/a National Paintball Supply, Inc.) and against Procaps, L.P. (f/k/a Paintball, L.P.) in the amount of $9,674,443.46 plus simple annual interest at the rate of 9% on any unpaid portion of that amount from June 1, 2007 until paid in full, as set forth in the Final Arbitration Award dated April 26, 2007;

b. An award of the attorneys' fees and costs incurred by Respondent in connection with this Answer and Cross-Petition;

c. Post-judgment interest on the above amounts; and

d. Such other relief as the Court may deem appropriate.

Respectfully submitted,

\_\_\_\_/s/_____
J Michael Lewis, Esquire
Federal Bar No: JL8893
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086

*Attorneys for Respondent*
*PBS Holding Group, Inc.*
*(f/k/a National Paintball Supply, Inc.)*

OF COUNSEL:

Patrick J. Loftus, Esquire
Robert E. Kelly, Esquire

Lawrence H. Pockers, Esquire
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196

*Attorneys for Respondent*
*PBS Holding Group, Inc.*
*(f/k/a National Paintball Supply, Inc.)*