# AMERICAN ARBITRATION ASSOCIATION
## AMENDED DEMAND FOR ARBITRATION

| *MEDIATION is a nonbinding process. The mediator assists the parties in working out a solution that is acceptable to them. If you would like the AAA to contact the other parties to determine whether they wish to mediate this matter, please check this box. There is no additional administrative fee for this service.* | | | | | |
|---|---|---|---|---|---|
| TO: Paintball, L.P.<br>c/o Robert Molyneux, Richard Italia, and Richmond Italia. | | Name of Representative (if known)<br>Jon A. Baughman | | Name of Firm (if applicable)<br>Pepper Hamilton LLP | |
| Address: 6000 Kieran Street | | | Representative's Address<br>3000 Two Logan Square, 18th and Arch Streets | | |
| City: Ville St. Laurent | Province/Country<br>Quebec, Canada | Zip Code:<br>H4S 2B5 | City<br>Philadelphia | State<br>PA | Zip Code<br>19103-2799 |
| Phone No.<br>514-337-1779 | Fax No.<br>Unknown | | Phone No.<br>215-981-4000 | Fax No.<br>215-981-4750 | |

Claimant National Paintball Supply, Inc. ("NPS") and respondent Paintball, L.P. ("PLP") are parties to a Paint Distribution Agreement[1], which contains a written arbitration provision. Section 16.09 of the Agreement, attached as Exhibit 1, provides for arbitration with the American Arbitration Association, and, pursuant to this provision, NPS filed a Demand for Arbitration on June 21, 2005. NPS hereby files this Amended Demand pursuant to the same provision.

IS THIS A DISPUTE BETWEEN A BUSINESS AND A CONSUMER?    Yes    No X

THE NATURE OF THE DISPUTE:
NPS entered into the Agreement with Procaps Encapsulation ("QIP") under which QIP manufactured certain paintballs for NPS. When PLP acquired certain business interests in QIP it requested NPS's consent to the assignment of the Agreement. In seeking that required consent, PLP warranted and represented to NPS that it would maintain, honor, and assume the Agreement and all associated obligations and that it would continue to perform under the Agreement in good faith. Relying on these representations, NPS agreed to the assignment on March 4, 2005. Shortly thereafter, PLP indicated that it intended to terminate the Agreement when NPS rebuffed PLP's acquisition overtures and began to fail to live up to its promises made to NPS and began taking action that has led to a complete repudiation of the Agreement. These acts included willful breaches of the Agreement followed by a purported termination of the Agreement on June 24, 2005, without justification.

Prior to the purported (and improper) termination, PLP breached numerous provisions of the Agreement, including: Sections 4.03 and 4.04, by refusing to ship paintballs in accordance with the NPS' Orders; Sections 3.03, 3.04, and 5.06, by charging NPS in excess of the lowest price charged to other customers and by charging third party purchasers lower prices for paintballs than permitted in the Agreement; Section 2.03 of the Agreement and Section 3(ii) of the DDeuro Amendment to the Agreement, by soliciting paintball business in contravention of NPS's complete exclusivity to PLP to manufacturer paintballs in and throughout the European Territory; and Section 7.01 of the Agreement, by selling paintballs under the DraXxus trademark in breach of NPS' worldwide exclusivity with respect the mark. These breaches are further detailed and explained in the letter from NPS to PLP, dated June 20, 2005, attached as Exhibit 2. PLP has refused to acknowledge or address the letter and, rather, improperly terminated the Agreement without justification. Furthermore, NPS agreed to the assignment of the Agreement from QIP to PLP based on PLP's representations referenced above. PLP knew that these representations were false or made them recklessly without any knowledge of their truth, or made them negligently, as it should have known that the representations were untrue. Accordingly, in addition to breach of contract claims, NPS brings claims for fraud, negligent misrepresentation, and equitable fraud. In furtherance of its acts inconsistent with the Agreement, PLP has engaged in a campaign to disparage NPS' good reputation in the industry in violation of New Jersey's Unfair Competition Statute, N.J. Stat. §56:4-1 et. seq. and the common law. These acts also constitute trade libel. And, through this disparagement, PLP has tortuously interfered with NPS' existing and potential business relationships.

---

[1] Including that certain September 20, 2004, Distribution Agreement ("Paint Distribution Agreement") which incorporates by reference various provisions of that certain Wholesale Product Supply and Distribution Transfer Agreement executed on February 28, 2002 (the "DDUSA Agreement") and various provisions of that certain Amendment of Contract Terms executed May 2004 (the "DDEURO Amendment") and that certain X-Ball Rebate Agreement executed as of September 20, 2004 (the "X-Ball Agreement") (collectively the Paint Distribution Agreement, the surviving provisions of the DDUSA Agreement and the DDEURO Agreement and the X-Ball Agreement are referred to as the "Agreement") said Agreement being entered into by and between NPS and Procaps Encapsulation, Inc. ("QIP") as assigned to Paintball, L.P. ("PLP").

PHLIT\531241\1

| THE CLAIM OR RELIEF SOUGHT (the Amount, if Any) |
|---|
| At this time, NPS brings claims for breach of contract for which it seeks any and all damages resulting from PLP's breach to which NPS is entitled under the Agreement and/or under the applicable law, improper repudiation, for which it seeks liquidated damages and specific performance pursuant to the termination provisions of the Agreement (including the payment of $1,700,000 million in liquidated damages and certain continuing performance obligations), claims for fraud, negligent misrepresentation, equitable fraud, tortious interference, and trade libel for which it seeks compensatory and punitive damages, and brings a claim for unfair competition under the common law and N.J. Stat. §56:4-1 *et. seq*, under which NPS is entitled to treble damages and injunctive relief. In total, NPS approximates monetary damages at $5,000,000. This figure is exclusive of interest, attorneys' fees and costs, and other damages unascertainable at this time. NPS reserves the right to supplement this figure or seek additional damages consistent with the development of the record in this case and reserves the right to add additional claims should it become necessary to do so. NPS also seeks declaratory and injunctive relief. NPS respectfully requests that an administrative conference call be re-scheduled as quickly as possible so that a panel may be chosen and NPS can seek the interim relief needed to protect its rights. NPS reserves the right to further amend its demand for arbitration and to file a formal statement of claims to accompany its forthcoming motion for preliminary injunction once a panel has been selected. |

| DOES THIS DISPUTE ARISE OUT OF AN EMPLOYMENT RELATIONSHIP? | YES | No X |
|---|---|---|

| IF THIS DISPUTE ARISES OUT OF AN EMPLOYMENT RELATIONSHIP, WHAT WAS/IS THE EMPLOYEE'S ANNUAL WAGE RANGE? Note: this question is required by California law. |
|---|
| Less Than $100,000    $100,000 - $250,000    Over $250,000 |

| TYPES OF BUSINESS |
|---|
| Claimant: Paintball games, supplies, and equipment distribution company.  Respondent: Paintball manufacturing company |

| HEARING LOCALE REQUESTED: New York, New York |
|---|

You are hereby notified that copies of our arbitration agreement and this Amended Demand For Arbitration is being filed with the American Arbitration Association, International Centre for Dispute Resolution in New York, New York in *National Paintball Supply, Inc. v. Paintball, L.P.*, AAA No. 50 181 00252 05.

| Signature (may be signed by a representative) | Title<br>Outside Counsel | Date<br>7/7/05 |
|---|---|---|
| Name of Claimant<br>National Paint Ball Supply, Inc. | Name of Representative<br>Michael W. McTigue Jr./Alexander S. Helderman | Name of Firm (if Applicable)<br>Drinker Biddle & Reath LLP |
| Address (to Be Used in Connection with This Case)<br>570 Mantua Blvd. | | Representative's Address<br>One Logan Square, 18th & Cherry Streets | |
| City<br>Sewell | State<br>New Jersey | Zip Code<br>08080 | City<br>Philadelphia | State<br>Pennsylvania | Zip Code<br>19103 |
| Phone No.<br>(856) 464-1068 | Fax No.<br>(856) 464-8269 | | Phone No.<br>(215) 988-2700 | Fax No.<br>(215) 988-2757 | |