EXCLUSIVE DISTRIBUTOR AGREEMENT

THIS EXCLUSIVE DISTRIBUTOR AGREEMENT ("Agreement") made and entered into this 12 day of June 2002 ("Agreement Date"), by and between AIRTECH INDUSTRIES INC., (a Quebec corporation) with its principal place of business at 6000 Kieran, St. Laurent, Quebec, Canada H4S 2B5, hereinafter referred to as "ATI" and NATIONAL PAINTBALL SUPPLY, INC., (a Delaware corporation) with its principal place of business at 570 Mantua Blvd., Sewell, New Jersey, U.S.A. 08080, hereinafter referred to as "NPS".

RECITALS:

WHEREAS, ATI is engaged in the manufacture and worldwide sale of paintball and air-soft game masks and goggle systems, together with spare parts and accessories; and

WHEREAS, NPS is engaged in the worldwide manufacture and distribution of paintball game supplies and equipment; and

WHEREAS, NPS desires to be appointed an independent, exclusive distributor to purchase and sell all of ATI's present and future Products, as herein defined, in and to the entirety of the Conventional Market, as herein defined, in the Territory, as herein defined, and ATI desires to appoint NPS to serve in such exclusive capacity, all upon the terms and subject to the conditions set forth herein this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual agreements and covenants hereinafter set forth and for other good and valuable consideration the sufficiency of which is hereby acknowledged, ATI and NPS agree as follows:

1. DEFINITIONS.

1.01  Agreement Date: as used hereunder and above shall mean, "the date this Agreement was executed by the parties hereto and the date from which the V-Force Minimums and/or the Supplemental Minimums, both as defined hereunder, shall be measured."

1.02  Territory: as used hereunder and above shall mean "the entirety of the continental United States of America plus the states of Alaska and Hawaii and all United States territories including, but not limited to, American Samoa, Guam, North Mariana, Puerto Rico and the Virgin Islands.

1.03  Conventional Market: as used hereunder and above shall mean "any wholesale and/or retail outlet where more than fifteen percent (15%) of the gross sales of said outlet are derived from paintball and paintball game related products and services; including, but not necessarily limited to paintball field and game sites, tournaments and special events."

1.04  Non-Conventional Market: as used hereunder and above shall mean "any retail outlet where less than fifteen percent (15%) of the gross sales of said outlet are derived from paintball and paintball game related products and services; specifically excluding, however, retailers doing less than ten million dollars a year in gross sales which shall be considered a portion of the Conventional Market."

1.05  Core ATI Products. As used hereunder shall mean "any and all present and/or future ATI paintball game masks and goggle systems, together with spare parts and accessories, manufactured and sold under ATI's exclusive trade names and trade dress including but not necessarily limited to V-Force and Conquest branded."

1.06  OEM Products: As used hereunder shall mean "all present and future paintball game masks and goggle systems, together with spare parts and accessories, manufactured and sold to NPS by ATI under NPS' exclusive trade names and trade dress pursuant to a license."

1.07  Products. As used hereunder and above shall mean "collectively, Core ATI Products and OEM Products."

1.08  Extra-Territorial Sales: as used hereunder shall mean "NPS' sales of Products outside the Territory."

EXHIBIT
NPS - 5
PENGAD 800-631-6989

CONFIDENTIAL--ATTORNEYS' EYES ONLY
NPS-043090

1.09   **Purchase Year**: as used hereunder shall mean "every successive period of twelve (12) months following the Agreement Date."

1.10   **Order**: as used hereunder shall mean "a written purchase order for Products submitted by NPS to ATI."

1.11   **Private Label Products**: as used hereunder shall mean "paintball mask and goggle systems manufactured and sold by ATI for and to a third party under said third-party's exclusive trade names and trade dress pursuant to a license and/or other agreement."

2.   **EXCLUSIVE DISTRIBUTOR; EXCLUSIVE REQUIREMENTS/SUPPLY; TERRITORY.**

2.01   During the term of this Agreement and any renewal term(s) thereof and subject to the terms, conditions and limitations herein, ATI appoints NPS to serve as the exclusive distributor for Core ATI Products in the Conventional Market throughout the entirety of the Territory, and NPS accepts such appointment. ATI shall not appoint other distributors for Core ATI Products for sale and/or resale to the Conventional Market in the Territory and/or sell its Core ATI Products through independent sales representatives and/or by direct sales to the Conventional Market in the Territory at retail, wholesale or otherwise. Further, and for the avoidance of doubt, unless otherwise authorized pursuant to Section 2.07 and/or Section 2.10(ii) herein, ATI shall not manufacture and/or sell Private Label Products in and/or to the Conventional Market in the Territory.

2.02   NPS shall exert its reasonable efforts to vigorously, diligently and faithfully promote the sale of Products, including Core ATI Products, in and throughout the Territory. NPS shall, during the term of this Agreement or any renewal term(s) thereof, at its sole cost and expense, promote the sale of Products by, among other things, actively advertising the Products, said Products to be given the highest prominence of all goggle/mask brands carried by NPS, in and throughout the Territory in accordance with NPS' standard business practices, and ensuring NPS include said Products, at a minimum, (a) in NPS' most current catalogue, (b) in at least thirteen of NPS' "Thursday Fax Specials" per Purchase Year, and (c) in at least Twelve (12) stand alone advertisements per Purchase Year in NPS' affiliate, *Paintball 2Xtremes Magazine*, for so long as the publication is published and/or remains an affiliate of NPS. In the event that *Paintball 2Xtremes* is no longer published or remains an affiliate of NPS, an alternate, paintball magazine, with equivalent distribution shall be selected through agreement between NPS and ATI, for use as the vehicle for the ad placement described herein.

2.03   ATI shall exert its reasonable efforts to vigorously, diligently and faithfully promote the sale of Core ATI Products in and throughout the Territory. ATI shall, during the term of this Agreement or any renewal term(s) thereof, at its sole cost and expense, promote Core ATI Products by, among other things, actively advertising the Core ATI Products in and throughout the Territory in accordance with ATI's past business practices, ensuring, at a minimum, that at all times the Core ATI Products are advertised prominently in at lease one (1) industry magazine.

2.04   Without limiting the foregoing and for the avoidance of doubt, within the Territory, the parties hereto agree that Core ATI Products, OEM Products and Private Label Products shall be segregated, distinguished and/or differentiated in and between the Conventional Market and Non-Conventional Market in accordance with the following criteria, constraints and understandings:

    2.04(i)   V-Force branded goggles and mask systems may not be manufactured and/or sold into the Non-Conventional Market, without NPS' express written authorization, and said V-Force branded goggle and mask systems are intended by the parties hereto to be the premier and/or primary Conventional Market Core ATI Product;

    2.04(ii)   Conquest branded goggles and mask systems may not be manufactured and/or sold into the Conventional market, without NPS' express written authorization, and said Conquest branded goggle and mask systems shall represent ATI's premier and/or primary Non-Conventional Market Core ATI Product;

    2.04(iii)   ATI may manufacture and sell Private Label Products in and to the Non-Conventional Market but may not manufacture and/or sell Private Label Products to the Conventional market unless in

CONFIDENTIAL--ATTORNEYS' EYES ONLY
NPS-043091

accordance with Section 2.07 and/or Section 2.10(ii) herein; and

2.04(iv) NPS may sell OEM Products in and to both the Conventional and Non-Conventional Markets.

By mutual agreement the parties over time may modify the above criteria, constraints and understandings as to what Products and/or Private Label Products can and/or can not be sold in and to the Conventional Market and/or Non-Conventional Market, and notwithstanding anything set forth herein this Section 2.04, the exclusivity covenants and provisions set forth hereunder as to the Conventional Market shall not be diminished and is complete and total.

2.05   Subject to the criteria, constraints and understandings set forth in Section 2.04 above, nothing hereunder shall be construed to limit or prevent NPS from selling OEM Products or certain Core ATI Products in and to the Non-Conventional Market. Further, ATI hereby warrants, provided NPS actively and primarily pursues Non-Conventional Market sales of and with either OEM Products and/or certain Core ATI Products and actively and exclusively pursues "Mass Merchant" (i.e. Wal-mart, K-Mart, Sports Authority, etc.) Non-Conventional Market sales of and with either OEM Products and/or certain Core ATI Products during the term of this Agreement or any renewal term(s) thereof, that ATI shall not enter into an arrangement with a third-party that would prevent or in any manner limit NPS' nonexclusive right to sell OEM Products and certain Core ATI Products into the Non-Conventional Market.

2.06   From time to time, ATI, in its reasonable and sole discretion, may elect to withdraw any Core ATI Product. ATI agrees to give NPS not less than three (3) months prior written notice as to any such withdrawal except in the case of emergency or recall.

2.07   ATI may, at the discretion of NPS and only upon NPS' written authorization, manufacture and/or sell Core ATI Products or Private Label Products into the Conventional Market within the Territory, not otherwise permitted hereunder.

2.08   NPS shall engage in extra-Territorial Sales of Products to extra-Territorial customers that, as of the date hereof, are not active customers of ATI's European and/or Canadian distributors, identified in Section 12 herein. In the event NPS inadvertently should sell Products to an extra-Territorial customer of ATI's European and/or Canadian distributors, ATI shall notify NPS in writing and NPS thereafter shall make no further sales of Products to the same. Conversely, ATI shall ensure that ATI's Extra-Territorial distributors do not sell Core ATI Products and/or Private Label Products to the Conventional Market within the Territory.

2.09   In order to maintain the exclusivity contemplated hereunder, NPS shall purchase a minimum quantity of Seventy Five Thousand V-Force branded Core ATI Products each Purchase Year during the term of this Agreement and any renewal term(s) thereof ("V-Force Minimums"). In addition to the aforementioned V-Force Minimums, NPS shall purchase over the second Purchase Year and each Purchase Year thereafter through the sixth (6th) Purchase Year an additional Eight Thousand Products per Purchase Year and an additional amount of Products each purchase Year thereafter in accordance with "growth projections" to be agreed upon in good faith by the parties hereto ("Supplemental Minimums").

2.10   In the event NPS does not purchase its V-Force Minimums and/or Supplemental Minimums as set forth in Section 2.09 above during the first or any successive Purchase Year of this Agreement either

2.10(i) ATI may terminate this Agreement, effective ninety (90) days after notice, provided ATI notifies NPS in writing on or before the fifteenth (15th) day following the Purchase Year in which NPS failed to satisfy its V-Force Minimums and/or Supplemental Minimums; or

2.10(ii) ATI may manufacture and sell Private Label Products in and to the Conventional Market provided ATI notifies NPS in writing on or before the fifteenth (15th) day following the Purchase year in which NPS failed to satisfy its V-Force Minimums and/or Supplemental Minimums; or

2.10(iii) the parties may mutually agree in writing that NPS shall continue to purchase and sell Products on a non-exclusive basis provided the parties hereto agree to said non-exclusivity on or before the Fifteenth (15th) day following the Purchase Year in which NPS failed to satisfy its V-Force Minimums and/or Supplemental

CONFIDENTIAL--ATTORNEYS' EYES ONLY
NPS-043092

Minimums.

Time is of the essence in regard to this Section 2.10.

2.11    In the event NPS does not satisfy its V-Force Minimums during the first or any subsequent Purchase Year during the term of this Agreement or any renewal term(s) thereof, and in addition to the remedies set forth in Section 2.10 above, ATI may compel NPS to compensate ATI Four Dollars and Eighteen Cents ($4.18) for every unit short of the V-Force Minimum of 75,000 units.

2.12    Nothing in this Agreement shall prohibit NPS from selling paintball masks and goggle systems manufactured by others in the Territory or Extra-Territorially. Without limiting the foregoing, it is the intention of the parties hereto that the Products manufactured and sold by ATI for and to NPS shall be the foremost paintball mask and goggle system that NPS will aggressively and diligently promote in the Territory.

2.13    Without limiting anything hereunder, the parties hereto agree that ATI shall be permitted and/or otherwise authorized to sell those specific Core ATI Products, presently in ATI inventory and specifically identified and set forth on Exhibit B attached hereto to any party ATI shall determine and into either the Conventional Market and/or Non-Conventional Market until all said Core ATI Products identified and set forth on Exhibit B are sold, provided first NPS shall have declined to purchase same, in writing within thirty (30) days from the Agreement Date.

3.    FORECASTING; MANUFACTURE; ORDERS; PACKAGING

3.01    NPS will Order Products from ATI pursuant to a Sixty (60) day rolling forecast and Order procedure. NPS and ATI agree to design a mutually agreeable system and documentation for the contemplated forecast/Order procedure.

3.02    NPS shall purchase Products pursuant to an Order. The Order shall set forth the description of the Product(s) being purchased, date and time of delivery, associated color(s), quantity(ies) and relevant shipping information.

3.03    Subject to the provisions of Section 3.01 and Section 3.02 above, ATI shall use its best efforts to ship the Products to NPS within forty-Five (45) days following ATI's receipt of each Order, subject to Section 4.01 and provided it is reasonable under the circumstances.

3.04    The prices ATI charges NPS for the Products set forth in Exhibit A and sold hereunder shall include packaging as outlined Exhibit A attached hereto. The prices ATI charges NPS for future OEM Products and packaging are set forth in Exhibit A. Without limiting the foregoing, pursuant to Section 7.01 herein, Core ATI Products shall be packaged and labeled under exclusive trade names and logos according to ATI's previous business practices and business judgment and may be changed from time to time at the discretion of ATI. Further, pursuant to Section 7.02 herein, OEM Products shall be packaged by ATI based upon, and in accordance with, schematics and under exclusive trade names and logos provided by NPS, which may be changed by NPS from time to time on reasonable notice to ATI.

4.    PRICING; SHIPPING; RISK OF LOSS

4.01    NPS shall pay ATI the base prices specified in Exhibit A attached hereto. The Products shall be shipped, at ATI's expense, FOB NPS provided the Products are shipped along with paintballs to NPS from ATI's affiliate, Procaps Encapsulation, Inc. In the event NPS requests Products to be shipped separately from the aforementioned paintballs or to a location other than NPS then the Products shall be shipped at NPS' expense, FOB ATI. NPS shall be responsible to pay ATI for Products purchased hereunder on or before Forty-Five (45) days from the date the respective Products are shipped from ATI's facility(ies).

4.02    During the term of this Agreement and any renewal term(s) thereof, ATI shall maintain its pricing to allow NPS to remain competitive in its paintball mask and goggle system marketplace by periodically calibrating said base prices against general price trends and those prices charged by manufacturers of similar quality and products of similar value in the paintball industry.

CONFIDENTIAL--ATTORNEYS' EYES ONLY
NPS-043093

4.03  Without limiting anything set forth in Section 4.02 herein, ATI may, however, increase the base prices set forth in Exhibit A as such increases may be necessitated by increases in ATI's raw material, production including packaging costs, labor costs and justified by market conditions, on providing NPS with forty-five (45) days prior written notice of such price increase.

4.05  The Risk of Loss on and for all Products sold and/or purchased pursuant to and under this Agreement shall pass to NPS upon NPS' receipt of said Products.

5.  **OBLIGATIONS OF NPS**

5.01  From and after the date hereof, NPS, at its sole cost and expense, with sole responsibility in its capacity as distributor and in full compliance with all applicable laws and regulations in that capacity, including but not limited to those of appropriate regulatory authorities, shall:

  i.  Store the Products using appropriate facilities and equipment, which comply with current good material handling procedures and practices;

  ii.  Distribute the Products received from ATI without any modifications unless such modifications are mutually agreed upon prior to distribution;

  iii.  Promptly forward, in writing, to ATI all charges, complaints or claims which NPS receives or which otherwise come to NPS' attention covering any Products, and, at ATI's request, cooperate with ATI in investigating any such charges, complaints or claims;

  iv.  Obtain and maintain in full force and effect such federal, state and local records, authorization, permits, and licenses as may be required by law, including any appropriate regulatory authority, and fully comply with and observe all applicable laws, ordinances, rules and regulations related to the distribution of the Products;

  v.  Maintain adequate sales and warehouse facilities for the Products;

  vi.  Maintain a sufficient inventory of Products and replacement parts reasonably to fulfill the requirements of NPS' customers; and

  vii.  Maintain a training program for sales personnel in connection with the demonstration, use, and sale of the Products.

6.  **PRODUCT WARRANTY & INDEMNIFICATION**

6.01  ATI warrants that all Products manufactured and supplied to NPS under this Agreement shall be free from defects in materials and workmanship and that all Products shall comply with the specifications issued by ATI and with ASTM (American Society for Testing and Materials). ATI will replace Products that do not conform to the foregoing warranty provided NPS notifies ATI in writing of such non-conformity immediately upon discovery through inspection or upon notice by one or more of NPS' customers having received such non-conforming Products. NPS shall endeavor to, but shall not be strictly responsible to, inspect each shipment of Products as the same arrives at NPS' warehouse facilities.

6.02  Without limiting the foregoing, acceptance of Products by NPS shall be subject to inspection and approval by NPS with respect to whether each Product is not defective.

6.03  Except for any liability that may arise from claims or actions from third party users of the Products, in no event shall ATI or NPS be liable to the other party for (a) any delay in the delivery of Products to NPS or by NPS to a third party, or (b) any special, indirect, consequential or incidental damages whatsoever.

6.04  Notwithstanding the fact that NPS covenants at all times, during the term of this Agreement and any renewal term(s) thereof to maintain on an occurrence basis, at NPS' expense, standard comprehensive general

CONFIDENTIAL--ATTORNEYS' EYES ONLY
NPS-043094

liability insurance coverage for property damage and personal injury from a qualified insurance carrier, as to all sales of Products by ATI to NPS, ATI shall maintain general liability insurance with coverage in the amount of Three Million Dollars ($3,000,000.00), or in amounts as the parties may mutually agree, and ATI hereby agrees to indemnify and hold harmless NPS as specified below:

    6.04(i) ATI hereby agrees to indemnify and hold harmless NPS from and against all claims, suits, actions, proceedings, judgments, deficiencies, liabilities, costs and expenses (including reasonable attorney's fees) as and when incurred in connection with or arising out of the sale or distribution of the Products by NPS; provided however, that no right of indemnification by ATI, pursuant to the provisions contained herein, or otherwise, shall be available to NPS if the Products which are the subject matter of any such claims, suits, actions, proceedings, judgments, deficiencies, liabilities, costs and expenses (including reasonable attorney's fees) have been altered in any way changed by NPS. No right to indemnification hereunder shall be available to NPS hereto unless it shall have given ATI prompt notice ("Claim Notice"), pursuant to the provisions of this Section 6.04(i), describing in reasonable detail the facts giving rise to the claim for indemnification after receipt of such knowledge of the facts upon which the claim is based. Upon receipt by ATI of a Claim Notice from NPS with respect to any claim of a third-party, ATI may assume the defense thereof with counsel reasonably satisfactory to NPS and NPS shall cooperate in the defense or prosecution thereof and shall furnish such records, information and testimony and attend all such conferences, discovery proceedings, hearings, trials and appeals as may be reasonably requested in connection therewith. NPS shall have the right to employ its own counsel in any such case, but the fee and expenses of such counsel shall be at the expense of NPS unless ATI shall not have promptly employed counsel reasonably satisfactory to NPS to take charge of the defense of such action, in which case such fees and expenses shall be borne by ATI, and ATI shall not have the right to direct the defense of any such action on behalf of NPS. NPS shall give notice, pursuant to Section 13.06, to ATI of any proposed settlement of any claim, which settlement ATI may reject in its reasonable judgment within 10 days of receipt of such notice. ATI shall have the right, in its sole discretion, to settle any claim for monetary damages for which indemnification has been sought and is available hereunder.

7. <u>LICENSES</u>

7.01 Upon the Agreement date and during the term of this Agreement, ATI hereby grants, and NPS hereby accepts, an exclusive, royalty-free license to use those ATI exclusive trademarks and proprietary names, which may be changed and supplemented by ATI from time to time, including but not necessarily limited to V-Force and Conquest (collectively "ATI Marks") for the sale and promotion of Core ATI Products in the Territory and in accordance with the terms of this Agreement. The ATI Marks may be modified or supplemented from time to time, and notification of such modifications or additions shall be supplied to NPS for written agreement that such modifications or additions are included within the definition of ATI Marks for the purpose of this Agreement.

    7.01(i) Ownership Of Mark. NPS acknowledges that ATI is the owner of the ATI Marks. NPS agrees that it shall do nothing inconsistent with such ownership and that use of the ATI Marks by NPS should inure to the benefit of and be on behalf of ATI. NPS further agrees that (i) nothing in this Agreement shall give NPS any right, title or interest in the ATI Marks, other than the right to use the ATI Marks solely in accordance with this Agreement; and (ii) it shall at no time question or contest the title of ATI to the ATI Marks, or the validity of the ATI Marks.

    7.01(ii) Quality Standards. NPS agrees that it will sell, distribute and market the Core ATI Products in accordance with the good business practices that have been orally agreed upon between the parties. ATI shall have the right from time to time to require that NPS submit samples of NPS' use of the ATI Marks to ATI for inspection and approval. NPS agrees to use its best reasonable efforts to ensure that the quality of NPS' use of the ATI Marks is commensurate with the goodwill and reputation associated with the ATI Marks. NPS shall comply, at all times and at its own expense, with all laws, rules and regulations affecting or relating to this Agreement or pertaining to its sale, distribution and marketing of Core ATI Products bearing the ATI Marks and shall obtain all governmental approvals required by such laws, rules and regulations.

    7.01(iii) Form Of Use. NPS shall use the ATI Marks only in a form and manner and with appropriate

CONFIDENTIAL--ATTORNEYS' EYES ONLY
NPS-043095

legends, such as "™" or "®" as may be prescribed, such prescription to be reasonable, or approved, such approval not to be unreasonably withheld, from time to time by ATI. NPS shall supply ATI, upon request, with specimens of the use of the ATI Marks, as in advertising and promotional materials, or associated with the ATI Marked Core ATI Products for inspection.

7.01(iv) Term & Termination. This License shall terminate upon the termination or sooner cancellation of this Agreement and the termination or sooner cancellation of this Agreement shall not affect any obligation or liability accruing prior to the date of termination or any obligation or liability, which from the context of this Agreement is intended to survive termination. Upon termination of this Agreement, NPS shall, subject to Section 8.04, immediately discontinue all use of the ATI Marks as herein provided.

7.02   Upon the Agreement date and during the term of this Agreement, NPS hereby grants, and ATI hereby accepts a royalty-free license to use those NPS exclusive trademarks and proprietary names, which may be changed and supplemented by NPS from time to time, including but not necessarily limited to 32 Degrees, National Paintball Supply, Inc., HeadCase and Diablo (collectively "NPS Marks") for the manufacture and sale and promotion of OEM Products exclusively to NPS and in accordance with the terms of this Agreement. The NPS Marks may be modified or supplemented from time to time, and notification of such modifications or additions shall be supplied to ATI for written agreement that such modifications or additions are included within the definition of NPS Marks for the purposes of this Agreement.

7.02(i) Ownership Of Mark. ATI acknowledges that NPS is the owner of the NPS Marks. ATI agrees that it shall do nothing inconsistent with such ownership and that use of the NPS Marks by ATI should inure to the benefit of and be on behalf of NPS. ATI further agrees that (i) nothing in this Agreement shall give ATI any right, title or interest in the NPS Marks, other than the right to use the NPS Marks solely in accordance with this Agreement; and (ii) it shall at no time question or contest the title of NPS to the NPS Marks, or the validity of the NPS Marks.

7.02(ii) Quality Standards. ATI agrees that it will manufacture and sell to NPS the NPS Marked OEM Products in accordance with the good business practices that have been orally agreed upon between the parties. ATI further agrees that the quality of the NPS Marked OEM Products will be of a quality commensurate with industry. ATI agrees to use its best reasonable efforts to ensure that the quality of the NPS Marked OEM Products is commensurate with the goodwill and reputation associated with the NPS Marks. NPS shall have the right to require from time to time that ATI submit samples of the NPS Marked OEM Products for inspection. ATI shall comply, at all times and at its own expense, with all laws, rules and regulations affecting or relating to this Agreement or pertaining to its sale, distribution and marketing of OEM Products bearing the NPS Marks and shall obtain all governmental approvals required by such laws, rules and regulations.

7.02(iii) Form Of Use. ATI shall use the NPS Marks only in a form and manner and with appropriate legends, such as "™" or "®" as may be prescribed, such prescription to be reasonable, or approved, such approval not to be unreasonably withheld, from time to time by NPS. ATI shall supply NPS, upon request, with specimens of the use of the NPS Marks, as in advertising and promotional materials, or associated with the NPS Marked Paintballs for inspection.

7.02(iv) Term & Termination. This License shall terminate upon the termination or sooner cancellation of this Agreement and the termination or sooner cancellation of this Agreement shall not affect any obligation or liability accruing prior to the date of termination or any obligation or liability, which from the context of this Agreement is intended to survive termination. Upon termination of this Agreement, ATI shall immediately discontinue all use of the NPS Marks as herein provided.

8.   **TERM AND TERMINATION**

8.01   This Agreement shall become effective on the Agreement Date and shall remain in full force and effect for a period of seven (7) years and shall thereafter be renewed automatically for another term of seven (7) years and thereafter shall be renewed automatically year to year unless terminated by either party upon written notice delivered at least six (6) months prior to the end of the initial term of this Agreement or any renewal term(s) thereof.

**CONFIDENTIAL--ATTORNEYS' EYES ONLY**
**NPS-043096**