Contains Confidential-Attorneys' Eyes Only Information

## IN THE AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| NATIONAL PAINTBALL SUPPLY, INC., | § § § § | AAA No. 50 T 181 25205 |
| Claimant, | § | |
| v. | § § § | |
| PAINTBALL L.P., | § § | |
| Respondent, | § § § | |

| | | |
|---|---|---|
| PROCAPS L.P. f/k/a PAINTBALL L.P., | § § § | |
| Counterclaim-Claimant, | § § | |
| v. | § § | |
| NATIONAL PAINTBALL SUPPLY, INC., | § § § | |
| Counterclaim-Respondent. | § § § | |

**Expert Report of Roy J. Epstein, PhD**

**July 14, 2006**

Ex. PLP-453

Contains Confidential-Attorneys' Eyes Only Information

## I.    INTRODUCTION AND SUMMARY OF OPINION

1. My name is Roy J. Epstein. I am an economist who specializes in economic and financial analyses, including expert testimony, in litigation matters. I have been an economics professor and economic consultant for over 20 years. Earlier in my career I held senior positions as an economist, principal, and director in several national economics consulting firms, including Lexecon, Analysis Group/Economics, and LECG. I now have an independent practice, based in Belmont, MA. I have a Ph.D. in Economics from Yale University. I have additional training in accounting and finance from the Graduate School of Business at the University of Chicago. From 1985 to 1989 I was an assistant professor of economics at the University of Illinois at Chicago. Since September 2003 I have been adjunct professor of finance at the Carroll School of Management at Boston College. In addition, I have served as an economic advisor on antitrust matters to the European Commission. A copy of my curriculum vitae is attached as Exhibit 1, which also contains a list of my publications in the past 10 years.

2. I have testified in federal court, before the Copyright Arbitration Royalty Panel of the U.S. Library of Congress, and in arbitration proceedings under the auspices of the American Arbitration Association. I have extensive experience in matters involving analysis of competition, calculation of economic damages, and econometrics, which is the application of statistical methods to economic data. The testimony I have provided in the past four years is listed in Exhibit 2.

3. I have been asked by counsel for Counterclaim-Claimant Procaps L.P. ("Procaps") to provide an independent assessment of two issues in this lawsuit. First is to determine the liquidity of Counterclaim-Respondent National Paintball Supply, Inc. ("NPS") at the end of June 2005 and to relate that to the outstanding amounts payable to Procaps. Second is to determine the damages to Procaps on the assumption that NPS is liable for breach of the September 2004 Paintball Agreement and the Goggles and Masks Agreement (the

Contains Confidential-Attorneys' Eyes Only Information

## VI.  CONCLUSION

53. The value of the unpaid NPS receivable owed to Procaps is $5,016,387 in principal plus interest (as of 1 July 2006) in the amount of $306,631, for a total of $5,323,018.

54. Procaps will suffer at least $13,326,323 in total damages (present value as of 1 July 2006) as a result of termination of the Agreement with NPS.

55. NPS did not have the financial resources to pay the overdue amounts due Procaps in June or July 2005.

Contains Confidential-Attorneys' Eyes Only Information

Roy J. Epstein

July 14, 2006