**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                           :

PROCAPS, L.P. (f/k/a Paintball L.P.),         :       07 CV 6208 (LAP)
                           :

           Petitioner,         :

                           :

         v.                 :

                           :

PBS HOLDING GROUP, INC. (f/k/a National  :
Paintball Supply, Inc.),               :

                           :

           Respondent.       :

                           :
------------------------------------------------------------X

## MEMORANDUM OF LAW OF RESPONDENT, PBS HOLDING GROUP, INC., IN OPPOSITION TO PETITION TO VACATE ARBITRATION AWARD AND IN SUPPORT OF RESPONDENT'S CROSS-PETITION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT

 

Respectfully submitted,

      /s/
_____

J Michael Lewis, Esquire
Federal Bar No: JL8893
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086

*Attorneys for Respondent*
*PBS Holdings Group, Inc.*
*(f/k/a National Paintball Supply, Inc.)*

OF COUNSEL:
Patrick J. Loftus, Esquire
Robert E. Kelly, Esquire
Lawrence H. Pockers, Esquire
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196

*Attorneys for Respondent*
*PBS Holdings Group, Inc.*
(f/k/a National Paintball Supply, Inc.)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    PRELIMINARY STATEMENT .........................................................1

III.   PERTINENT FACTUAL BACKGROUND ......................................1

IV.   ARGUMENT .......................................................................................6

      A.     The Final Award Should Be Confirmed And Enforced Against Procaps Pursuant To 9 U.S.C. § 207 Because None Of The Grounds To Refuse Recognition Of The Final Award Under The New York Convention Is Even Remotely Present In This Case.......................................................7

      B.     In Addition, The Final Award Should Be Confirmed And Enforced Against Procaps Pursuant To 9 U.S.C. § 207 Because None Of The Grounds For Vacating An Arbitration Award Under 9 U.S.C. § 10 Is Even Remotely Present In This Case ..........................................................10

            1.     The Arbitrators Were Well Within Their Powers In Refusing To Enforce The Liquidated Damages Clause In The Paintball Contract .......12

            2.     Procaps Cannot Establish Any Of The Requirements Necessary For The Court To Even Remotely Consider Vacating The Final Award On The Grounds That It Was Procured By Fraud ........................17

V.     CONCLUSION...................................................................................19

## I.    INTRODUCTION

Respondent/Cross-Petitioner, PBS Holding Group, Inc. (f/k/a National Paintball Supply, Inc.) ("NPS"), by its attorneys, Duane Morris LLP, respectfully submits this Memorandum of Law in opposition to the Petition to Vacate Arbitration Award filed by Procaps L.P. ("Procaps") and in support of NPS' Cross-Petition to Confirm Arbitration Award and Enter Judgment against Procaps.

## II.    PRELIMINARY STATEMENT

By its Opposition and Cross-Petition, NPS seeks confirmation of, and the entry of judgment on, a final arbitration award (the "Final Award") in NPS' favor and against Procaps, and the denial of Procaps' Petition to Vacate (the "Petition").  Because the underlying arbitration involved distribution contracts contemplating partial performance in Canada, confirmation of the Final Award is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), which is codified in the Federal Arbitration Act ("FAA") at 9 U.S.C. § 201 and implemented at 9 U.S.C. §§ 201-208.  Under the New York Convention (as implemented by the FAA), a court *shall* confirm a non-domestic award unless one of a limited number of narrow exceptions applies.  Here, Procaps' Petition must be denied, and the Final Award must be confirmed, because none of the exceptions set forth in the New York Convention or in the FAA, including the two exceptions advanced by Procaps as grounds for vacating the Final Award, is applicable.

## III.    PERTINENT FACTUAL BACKGROUND

At all relevant times, NPS was a paintball game supply and distribution company headquartered in Sewell, New Jersey, which dealt in various types of paintball equipment, including numerous brands of markers and paintballs as well as goggles, air systems, loaders,

parts, and apparel.[1]  "Paintball" is a competitive game in which players use gas-powered markers (similar to air guns) to launch at each other marble-sized dye-filled gelatinous capsules (also known as "paintballs").  The purpose of the game is to eliminate players on the opposing team by striking them with a paintball.[2]

On June 12, 2002, NPS and AirTech Industries, Inc. ("AirTech"), a Canadian company, entered into an Exclusive Distributor Agreement under which NPS obtained exclusive distribution rights with respect to certain goggles manufactured by AirTech.[3]  The Exclusive Distributor Agreement was subsequently amended by a Confirmation of Contract Terms dated September 20, 2004.[4]  The June 12, 2002 Exclusive Distributor Agreement and the September 20, 2004 Confirmation of Contract Terms are hereinafter collectively referred to as the "Goggles Contract".

On September 20, 2004, NPS and Procaps Encapsulation, Inc. ("PEI"), another Canadian company, entered into a Product Supply Agreement under which NPS obtained exclusive distribution rights with respect to certain paintballs manufactured by PEI (the "Paintball Contract").[5]  The Goggles Contract and the Paintball Contract are hereinafter collectively referred to as the "Contracts".

Effective February 25, 2005, all rights, title and interest in the Contracts were assigned from PEI and AirTech, respectively, to Procaps, L.P. (f/k/a Paintball, L.P.), a limited partnership

---

[1]  See Affidavit of Lawrence H. Pockers ("Pockers Aff.") at Exh. "A", p. 1.

[2]  See Pockers Aff. at Exh. "A", p. 1.

[3]  See Pockers Aff. at Exh. "A", p. 2; Pockers Aff. at Exh. "K".

[4]  See Pockers Aff. at Exh. "A", p. 2; Pockers Aff. at Exh. "L".

[5]  See Pockers Aff. at Exh. "A", p. 2; Pockers Aff. at Exh. "M".

DM1\1173383.3

organized under the laws of Ontario, Canada, and the Petitioner herein.[6]   The effect of the

assignment was that, going forward, Procaps now stood in the shoes of PEI and AirTech with

respect to the subject matter of the Contracts.[7]

Procaps then breached the Contracts by, inter alia, prematurely and improperly

terminating the Contracts in June 2005, purportedly on the basis of two uncured default notices

that Procaps had mailed to NPS on May 17, 2005.  Pursuant to the identical arbitration

provisions in the Contracts, NPS instituted an arbitration proceeding against Procaps on June 21,

2005 by filing a Demand for Arbitration with the American Arbitration Association ("AAA").[8]

On July 8, 2005, NPS filed an Amended Demand for Arbitration.[9]  That same day, NPS also

commenced a separate arbitration against Procaps by filing a Demand for Arbitration with the

AAA.[10]  The two arbitrations were later consolidated.  On August 11, 2005, Procaps filed its

Response and Counterclaim to the Demands for Arbitration made by NPS.[11]

Ultimately, John H. Wilkinson, Esquire of Fulton Rowe Hart & Coon in New York, New

York, William A. Zucker, Esquire of McCarter & English in Boston, Massachusetts and David

L. Evans, Esquire of Hanify & King in Boston, Massachusetts, were selected by the parties and

appointed by the ICDR to preside as arbitrators over all aspects of the arbitration proceeding.

---

[6] See Pockers Aff. at Exh. "A", p. 2; Pockers Aff. at Exh. "N".

[7] Id.

[8] See Pockers Aff. at Exh. "B".  Because the dispute submitted for arbitration involved a domestic company and a Canadian company, the AAA, pursuant to its internal rules, administered the case through its International Centre for Dispute Resolution ("ICDR").

[9] See Pockers Aff. at Exh. "C".

[10] See Pockers Aff. at Exh. "D".

[11] See Pockers Aff. at Exh. "E".

Arbitration hearings were held on March 20 through 24, on September 5 through 8, and September 25 through 29, and on November 2 and 3, 2006. At the hearings, the parties were present and were represented by counsel,[12] and were given a full opportunity to present, and did present, evidence, witnesses, and arguments. In all, testimony from 15 different witnesses, including three expert witnesses, was presented at the hearings, and the testimony of five additional witnesses was presented to the arbitrators by way of deposition designation or stipulated testimony.

Following the close of the evidence, and after extensive post-trial submissions by the parties,[13] on April 26, 2007, the arbitrators issued a 38-page "Final Arbitration Award" (the "Final Award") containing a detailed factual and legal analysis of the dispute between the parties. In the Final Award, the arbitrators found in favor of NPS with regard to several legal issues, and in Procaps' favor with regard to certain other legal issues. The Final Award was deemed to have been made in New York, New York.[14]

Specifically, the arbitrators found that there had been binding contracts between the parties, that Procaps breached those contracts, that Procaps had no valid defenses and that NPS, as a result of Procaps' breaches, had suffered significant injury. In pertinent part, the arbitrators found:

---

[12] Procaps was represented at various stages of the arbitration hearings by Jon A. Baughman, Esquire, Francis P. Devine, III, Esquire and/or Nicole D. Galli, Esquire, among others, of the law firm of Pepper Hamilton LLP.

[13] See Pockers Aff. at Exhs. "F", "G", "H" and "I".

[14] See Pockers Aff. at Exh. "A", p. 37.

DM1\1173383.3

"NPS timely and effectively cured the defaults covered by the May 17, 2005 default notices."[15]

"Procaps had no right to terminate the Contracts as a result of any arrearages that may have arisen on or after June 23, 2005."[16]

"[T]here was a waiver of the 45 day payment provision of the Contracts up to the time of the May 17, 2005 default notices.  That being so, there was no payment default as of the date of those notices and, accordingly, the notices provided no basis for Procaps' purported termination of the Contracts."[17]

"Procaps never served NPS with an effective demand for [adequate] assurances within the meaning of the [Uniform Commercial Code] or the Contracts."[18]

"NPS clearly owes Procaps in the vicinity of $5 million for product it purchased and received but for which it never paid.  According to Procaps' records, the amount is $5,016,386 and according to NPS' records, the amount is $4,910,681.  For purposes of the Counterclaim, the Panel finds Procaps' number to be more reliable and, accordingly, it awards Procaps $5,016,386 on its Counterclaim for the account balance due to it."[19]

"On its claim for wrongful termination [of the Contracts, NPS] is awarded . . . $15,169,089."[20]

In addition to rejecting NPS' defenses to Procaps' Counterclaim, and awarding Procaps the full amount of the damages it sought on its Counterclaim, the arbitrators also ruled against NPS on a number of other legal issues.  For example, the arbitrators rejected NPS' claim for "market" and "cover" damages under the Uniform Commercial Code ("UCC").[21]  As a result, the

---

[15] See Pockers Aff. at Exh. "A", p. 19.

[16] See Pockers Aff. at Exh. "A", p. 20.

[17] See Pockers Aff. at Exh. "A", p. 22.

[18] See Pockers Aff. at Exh. "A", p. 24.

[19] See Pockers Aff. at Exh. "A", p. 29.

[20] See Pockers Aff. at Exh. "A", p. 35.

[21] See Pockers Aff. at Exh. "A", p. 34.

arbitrators did not award NPS an additional $15 million that NPS had sought to recover.[22]  In addition, NPS had sought damages for the entire term of the Contracts.  Specifically, NPS had sought six years of lost profits on account of Procaps' unlawful termination of the Paintball Contract, and four years of lost profits on account of Procaps' unlawful termination of the Goggles Contract.  Instead, the arbitrators limited NPS' damages to a period of approximately two and a half years from a date shortly after Procaps' unlawful termination of the Contracts.[23] As a result, the arbitrators did not award NPS an additional $6 million in damages NPS had sought to recover.[24]  Furthermore, the arbitrators refused to award NPS an additional $2 million NPS had sought to recover on account of Procaps' violations of the "best pricing" provisions of the Paintball Contract.[25]

The arbitrators "netted" the amounts to be awarded to NPS and Procaps, respectively, and thus ordered that Procaps make a single payment to NPS in the amount of $9,674,443.46, plus simple annual interest at the rate of 9% on any unpaid portion of that amount from June 1, 2007 until paid in full.[26]  The Final Award has not been corrected, vacated, set aside, suspended or modified.  Procaps has not yet complied, in whole or even in part, with the Final Award.

IV.    ARGUMENT

The standard for avoiding summary confirmation of an arbitration award is very high, and the burden of proof is on the party moving to vacate the award.  See Briamonte v. Liberty

---

[22] See Pockers Aff. at Exh. "F", p. 88.

[23] See Pockers Aff. at Exh. "A", p. 33.

[24] See Pockers Aff. at Exh. "F", pp. 87-88.

[25] See Pockers Aff. at Exh. "A", pp. 24-27; Exh. "F" at pp. 88-91.

[26] See Pockers Aff. at Exh. "A", p. 36.

Brokerage, Inc., 2000 U.S. Dist. LEXIS 4238, at *8 (S.D.N.Y. Mar. 31, 2000) (citing Willemijn

Houdstermaatschappij, BV v. Standard Microsystems, 103 F.3d 9, 12 (2d Cir. 1997)).  "The

confirmation of an arbitration award is a summary proceeding that merely makes what is already

a final arbitration award a judgment of the court."  Florasynth, Inc. v. Pickholz, 750 F.2d 171,

176 (2d Cir. 1984).  Arbitration awards "are subject to very limited review in order to avoid

undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long

and expensive litigation."  AT&T Corp. v. Public Service Enterprises of Pennsylvania, Inc., 1999

U.S. Dist. LEXIS 13108, at *7 (S.D.N.Y. Aug. 26, 1999) (quoting Folkways Music Publishers,

Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993)).  "Arbitration does not provide a system of

'junior varsity trial courts' offering the losing party complete and rigorous de novo review.  It is

a private system of justice offering benefits of reduced delay and expense.  A restrictive standard

of review is necessary to preserve these benefits and to prevent arbitration from becoming a

'preliminary step to judicial resolution.'"  Eljer Mfg., Inc. v. Kowin Development Corp., 14 F.3d

1250, 1254 (7th Cir. 1994) (citations omitted).  Under this "restrictive standard of review," the

Final Award here should be confirmed and entered as a judgment against Procaps.

     **A.**    **The Final Award Should Be Confirmed And Enforced Against Procaps Pursuant To 9 U.S.C. § 207 Because None Of The Grounds To Refuse Recognition Of The Final Award Under The New York Convention Is Even Remotely Present In This Case**

Because the Contracts and the Final Award arose out of a commercial, contractual

relationship between a domestic company and a Canadian company that involved performance

outside the United States, the Final Award is a "non-domestic" award under the FAA.

Accordingly, the New York Convention governs confirmation and enforcement of the Final

Award.  See 9 U.S.C. § 202.[27]    See also Productos Mercantiles E Industriales, S.A. v. Faberge

USA, Inc., 23 F.3d 41, 45 (2d Cir. 1994) (noting that arbitration award issued by AAA arbitrator

in New York would be a "non-domestic" award governed by the New York Convention where

the arbitration involved a foreign claimant and a domestic respondent and the underlying

agreement involved a license to distribute products in South America); Bergesen v. Joseph

Muller Corp., 710 F.2d 928, 933 (2d Cir. 1983) (examining legislative history of the statute

implementing the New York Convention, 9 U.S.C. § 202, and concluding that Congress intended

to exempt from coverage by the New York Convention only those agreements or awards arising

out of a legal relationship exclusively between citizens of the United States that had no

reasonable relation with a foreign state).

Courts in this Circuit have routinely confirmed "non-domestic" arbitration awards

pursuant to the New York Convention.  See, e.g., Yusuf Ahmed Alghanim & Sons, W.L.L. v.

Toys "R" Us, Inc., 126 F.3d 15, 23-25 (2d Cir. 1997) (affirming district court order confirming

arbitration award made in New York involving dispute between two non-domestic parties, noting

that party challenging confirmation had burden of proof and that "showing required to avoid

summary [confirmation] is high"); Parsons & Whittemore Overseas Co. v. Societe Generale de

---

[27] Section 202 of the FAA, which implements the New York Convention, provides, in pertinent
part, as follows:

> An arbitration agreement or arbitral award arising out of a legal
> relationship, whether contractual or not, which is considered
> as commercial, including a transaction, contract, or agreement described in
> section 2 of this title, falls under the Convention.  An agreement or award
> arising out of such a relationship which is entirely between citizens of the
> United States shall be deemed not to fall under the Convention unless that
> relationship involves property located abroad, or has some other
> reasonable relation with one or more foreign states.

9 U.S.C. § 202.

L'Industrie Du Papier (RAKTA), 508 F.2d 969, 973, 978 (2d Cir. 1974) (affirming district court

order confirming arbitration award entered in contract dispute between American company and

Egyptian company, noting that the "[New York] Convention's basic thrust was to liberalize

procedures for enforcing foreign arbitral awards"); La Societe Nationale Pour La Recherche v.

Shaheen Natural Resources Co., Inc., 585 F. Supp. 57, 65-66 (S.D.N.Y. 1983) (confirming and

entering judgment on arbitration award issued in Switzerland in dispute involving Algerian

company and U.S. company, finding that "[t]o deny recognition and enforcement to the

arbitration award . . . would be to violate the goal and the purpose of the [New York]

Convention, that is, the summary procedure to expedite the recognition and enforcement of

arbitration awards").

　　　Section 207 of the FAA provides that "non-domestic" arbitration awards shall be

confirmed "unless [the court] finds one of the grounds for refusal or deferral of recognition or

enforcement of the award specified in [the New York] Convention." 9 U.S.C. § 207. Under the

New York Convention, refusal to recognize or enforce a "non-domestic" arbitration award is

proper *only* under the following circumstances, none of which is present in this case:

　　　1. The parties to the arbitration agreement were under some incapacity or the arbitration
　　　agreement is not valid under the law to which the parties have subjected it or under the
　　　law of the country where the award was made;

　　　2. The party against whom the award is invoked was not given proper notice of the
　　　arbitration proceedings or was otherwise unable to present his case;

　　　3. The award deals with a difference not contemplated by or not falling within the terms
　　　of the submission to arbitration, or it contains decisions on matters beyond the scope of
　　　the submission to arbitration;

　　　4. The composition of the arbitral authority or the arbitral procedure was not in
　　　accordance with the agreement of the parties or the law of the country where the
　　　arbitration took place;

9

5.  The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, the award was made;

6.  The subject matter of the difference is not capable of settlement by arbitration under the law of the country where recognition and enforcement is sought;

7.  The recognition or enforcement of the award would be contrary to the public policy of the country where recognition and enforcement is sought.

9 U.S.C. § 201 (New York Convention, Article V(1) and (2)).

None of these circumstances is present here.  Neither party was incapacitated.  Both parties were present and participated fully in the underlying arbitration.  The parties' arbitration agreements are valid.  Indeed, Procaps has never contested the validity of the parties' arbitration agreements and Procaps submitted to and participated in the underlying arbitration without objection.  The Final Award does not purport to resolve any issue not before the arbitrators or outside the scope of the arbitration agreements or the arbitrators' authority.  There was no defect in procedure.  The Final Award has become binding on Procaps and has not been set aside or suspended.  The subject matter of the dispute between the parties, i.e., the parties' respective claims of breach of the Contracts, and the damages resulting therefrom, is capable of being settled by arbitration.  Recognition of the Final Award by the arbitrators, which was made in New York, New York, and pursuant to the AAA International Arbitration Rules, would obviously not be contrary to the public policy of the United States.

**B.      In Addition, The Final Award Should Be Confirmed And Enforced Against Procaps Pursuant To 9 U.S.C. § 207 Because None Of The Grounds For Vacating An Arbitration Award Under 9 U.S.C. § 10 Is Even Remotely Present In This Case**

Where, as here, the arbitration award was made in the United States and confirmation is sought in the United States, the Court may additionally consider the express and implied grounds under the FAA for vacating an award in weighing whether to confirm a "non-domestic" award.

See 9 U.S.C. § 201 (New York Convention, Article V(1)(e)).  See also Yusuf Ahmed Alghanim

& Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997).  The express grounds for

vacating an arbitration award under the FAA are set forth in 9 U.S.C. § 10, which provides, in

pertinent part, as follows:

> In any of the following cases the United States court in and for the district
> wherein the award was made may make an order vacating the award . . . :
>
> (1) Where the award was procured by corruption, fraud, or undue means.
>
> (2) Where there was evident partiality or corruption in the arbitrators, or either of
> them.
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the
> hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent
> and material to the controversy; or of any other misbehavior by which the rights
> of any party have been prejudiced.
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them
> that a mutual, final, and definite award upon the subject matter submitted was not
> made.

9 U.S.C. § 10.  None of these grounds under the FAA is present here.

> As this Court recently explained:
>
> The test for vacating an award is not whether a court disagrees with the arbitration
> panel's assessment of the evidence or its reasoning; it is not whether the Court,
> sitting without a jury, would have reached the same result or anything close to it;
> it is not whether the Court disagrees with the remedy or entertains not
> inconsiderable dubiety about the wisdom of the award; and it is not whether those
> later determined to be wrongdoers might be perceived to have received a windfall.
> Rather, both Congress and the Supreme Court have been explicit: an arbitration
> award may be vacated only if procured by corruption or fraud, if the arbitrators
> exhibited evident partiality, were guilty of misconduct, or exceeded their power.

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Savino, 2007 U.S. Dist. LEXIS 23126, at *1-2

(S.D.N.Y. Mar. 23, 2007) (Preska, J.).  In addition to the express grounds set forth in 9 U.S.C. §

10, an arbitration award may also be vacated where the arbitrators recognized, but manifestly

disregarded, clear law applicable to the case.  Id.  That did not occur here.

Here, Procaps has advanced two separate grounds for vacating the award: (1) the arbitrators allegedly acted in manifest disregard of the law and/or exceeded their powers by "ignor[ing] the liquidated damages clause in the [Paintball Contract]"; and (2) the Final Award was allegedly procured by fraud because the lost profits the arbitrators awarded to NPS were based on "fraudulent financial statements and fraudulent information provided by [NPS] as to the true extent of its financial condition." As set forth below, Procaps' arguments are entirely without merit.

### 1.    The Arbitrators Were Well Within Their Powers In Refusing To Enforce The Liquidated Damages Clause In The Paintball Contract

"Judicial review of an arbitration award for manifest disregard of the law is 'severely limited.'" Hoeft v. MVL Group, Inc., 343 F.3d 57, 69 (2d Cir. 2003) (quoting GMS Group, LLC v. Benderson, 326 F.3d 75, 81 (2d Cir. 2003)). Most significantly, "manifest disregard of the law" means more than error or misunderstanding with respect to the law, even were such an error or misunderstanding to be established by Procaps. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986). "The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." Id. Therefore, a party seeking to vacate an arbitration award on the basis of manifest disregard of the law must prove that (1) the arbitrator knew of a governing legal principle but refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator was well-defined, explicit, and clearly applicable to the case. Hoeft, 343 F.3d at 69.

Similarly, judicial review of whether arbitrators exceeded their powers is very limited. The inquiry under § 10(a)(4) of the FAA "focuses on whether the arbitrators had the power,

12

based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrators correctly decided that issue*." DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 824 (2d Cir. 1997) (emphasis added). See also Consolidated Rail Corp. v. Metropolitan Transportation Authority, 1996 U.S. Dist. LEXIS 3519, at *60-61 (S.D.N.Y. Mar. 22, 1996) ("The reviewing court is not to substitute its own judgment of the facts or interpretation of the contract for that of the arbitrators, even when convinced that they were plainly wrong") (citations omitted). The Second Circuit "ha[s] consistently accorded the narrowest reading to this subsection, especially when it 'has been invoked in the context of arbitrators' alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance.'" See Synergy Gas Co. v. Sasso, 853 F.2d 59, 63 (2d Cir. 1988) (citing In re Andros Compania Maritima, S.A., 579 F.2d 691, 703 (2d Cir. 1978)).

In Dole Ocean Liner Express v. Georgia Vegetable Co., 84 F.3d 772 (5th Cir. 1996) modified on reh'g 93 F.3d 166, the Fifth Circuit considered and rejected the precise argument made by Procaps in this case. In Dole, an arbitration panel awarded the claimant damages in excess of the amount provided for in the liquidated damages clause in the contract between the claimant and the respondent. Id. at 773. The District Court granted the arbitration respondent's petition to vacate the award, finding that, on that basis, the arbitration panel exceeded its authority under the contract. Id. On appeal, the Fifth Circuit observed that "[t]he determination of whether a liquidated damages clause is enforceable is made by application of a legal standard to the evidence." Id. at 774. The Court then noted that under Mississippi law, the law the parties had agreed their contract would be interpreted under, "liquidated damages provisions are not enforceable if they are not a reasonable pre-estimation of damages." Id. Applying this standard,

DM1\1173383.3

the Fifth Circuit *reversed* the District Court's order vacating the arbitration award, reasoning as follows:

> Whatever our belief about the enforceability of the liquidated damages clause may be, it is clear that the arbitration panel had the power to determine that it was not a reasonable pre-estimate of damages and therefore void. Because the determination of whether the liquidated damages provision was legally enforceable was left to the arbitration panel under the contract, the arbitration panel did not 'exceed their powers' by finding, as a matter of law, that it was void.

Id. (footnote omitted).

Here, as in Dole, the simple fact is that under no circumstances can Procaps satisfy its substantial burden of demonstrating that the arbitrators either manifestly disregarded the law or exceeded their powers in refusing to enforce the liquidated damages provision in the Paintball Contract.

With respect to the standard of "manifest disregard of the law," the arbitrators neither knew of nor refused to apply a "well-defined, explicit and clearly applicable" governing legal principle, because there is no such principle that would have required the arbitrators to enforce the liquidated damages provision in the Paintball Contract. Although Procaps does not expressly identify in its Petition the specific "governing legal principle" that the arbitrators allegedly ignored, the inference to be drawn from the Petition is that Procaps would argue that the arbitrators manifestly disregarded the law by refusing to hold that the liquidated damages and exclusive remedy provisions of the Paintball Contract[28] precluded, as a matter of law, an award of damages in excess of $1,250,000 for Procaps' breach of the Paintball Contract. However,

---

[28] See Pockers Aff. at Exh. "M", ¶¶ 8.05 and 8.06.

14

under New Jersey law,[29] as in the governing law in the Dole case, "provisions for liquidated damages are enforceable only if 'the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach.'" Wasserman's Inc. v. Township of Middletown, 645 A.2d 100, 109 (N.J. 1994) (citation omitted).  Indeed, Procaps readily acknowledged in its post-hearing briefing that courts applying New Jersey law "have closely scrutinized contract provisions that provide for specific performance and have declined to award 'liquidated damages' that do not reasonably compensate the aggrieved party," and that enforceability must be determined *on a case-by-case basis*.[30]  Thus, the "governing legal principle" that the arbitrators knew of and followed was *not* that liquidated damages provisions are *per se* enforceable under New Jersey law, because they are not, but rather that liquidated damages provisions are enforceable only if the amount of damages fixed is a "reasonable forecast of just compensation for the harm that is caused by the breach." Wasserman's, 645 A.2d at 109.

The arbitrators did not set forth in the Final Award their reasoning for refusing to enforce the liquidated damages provision in the Paintball Contract.  However, even in such circumstances the law is clear that "[w]hen arbitrators decline to provide an explanation for their decision, a reviewing court can only infer from the facts of the case whether 'the arbitrator[s] appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay

---

[29] The parties agreed that New Jersey law would apply in any disputes concerning the Paintball Contract.  See Pockers Aff. at Exh. "M", ¶ 16.05.  The Arbitrators enforced the parties' agreement and applied New Jersey law in interpreting the Paintball Contract.  See Pockers Aff. at Exh. "A".

[30] See Pockers Aff. at Exh. "G", pp. 54, 57, n.37; Exh. "I" at pp. 18-19.  See also River Rd. Assocs. v. Chesapeake Display & Packaging Co., 104 F. Supp. 2d 418, 425 (D. N.J. 2000) (holding that liquidated damages provision in commercial lease agreement was unenforceable).

DM1\1173383.3

no attention to it.'" <u>Savino</u>, 2007 U.S. Dist. LEXIS, at *18-19 (quoting <u>Willemijn</u>, 103 F.3d at 12).  Here, the clear inference to be drawn is that the arbitrators appreciated that they had the discretion to decide, and did decide, that the liquidated damages provision in the Paintball Contract did not reasonably forecast fair compensation for the harm caused to NPS by Procaps' breach.[31]  <u>See Dole</u>, 84 F.3d at 774 ("Whatever our belief about the enforceability of the liquidated damages clause may be, it is clear that the arbitration panel had the power to determine that it was not a reasonable pre-estimate of damages and therefore void").

The arbitrators also did not exceed their powers in refusing to enforce the liquidated damages provision in the Paintball Contract because this issue was plainly presented to the arbitrators to decide.  <u>See Hoeft</u>, 343 F.3d at 71 ("An arbitrator exceeds his powers when he 'rules on issues not presented to [him] by the parties.'") (quoting <u>Fahnestock & Co. v. Waltman</u>, 935 F.2d 512, 515 (2d Cir. 1991)).  <u>See also</u> Pockers Aff. at Exh. "G", pp. 54, 57; Exh. "I", pp. 18-19 (Procaps' post-hearing briefs, in which it argued that the liquidated damages provision should be enforced to limit NPS' damages).  As such, this ground for vacating an arbitration award under the FAA simply does not apply.  <u>See DiRussa</u>, 121 F.3d at 824 ("DiRussa's real objection appears to be that the arbitrators committed an obvious legal error in denying him

---

[31] There are any number of reasonable bases upon which the arbitrators may have rested their decision not to enforce the liquidated damages provision.  For example, the arbitrators may have concluded that the fixed sum of damages under the liquidated damages provision, $1,250,000, was not a reasonable forecast of the damages NPS would suffer as a result of a breach – as evidenced by the arbitrators' finding that NPS' actual damages as a result of Procaps' breach of the Paintball Contract (excluding damages solely attributable to Procaps' breach of the Goggles Contract) was in excess of $13 million.  <u>See</u> Pockers Aff. at Exh. "A", pp. 30-33.  Similarly, the arbitrators may have decided that, because the liquidated damages provision also contained a specific performance component requiring Procaps to supply NPS for one year following termination, which Procaps refused to do after NPS made a demand under this provision, enforcement of the monetary component of the liquidated damages provision would not be reasonable.  <u>See</u> Pockers Aff. at Exh. "M", ¶ 8.05; Exh. "O"; Exh. "S" at p. 138.

16

attorney's fees.  Section 10(a)(4) was not intended to apply to such a situation").  <u>See also</u> <u>Dole</u>, 84 F.3d at 774 (arbitrators did not exceed their powers by finding that liquidated damages provision was unenforceable).

> **2.    Procaps Cannot Establish Any Of The Requirements Necessary For The Court To Even Remotely Consider Vacating The Final Award On The Grounds That It Was Procured By Fraud**

In order to succeed on a petition to vacate an arbitration award on the grounds that the award was procured by fraud, as Procaps argues here, the party seeking to vacate the award must demonstrate that:  (1) its adversary engaged in fraudulent activity; (2) the fraud was material to an issue in dispute during the arbitration; and (3) the fraud could not have been discovered before or during the arbitration proceeding through the exercise of due diligence.  <u>See Hakala v. Deutsche Bank AG</u>, 2004 U.S. Dist. LEXIS 8297, at *7 (S.D.N.Y. May 12, 2004) (citing <u>Karppinen v. Karl Kiefer Mach. Co.</u>, 187 F.2d 32, 35 (2d Cir. 1951)).  With respect to this first test, Procaps bears the burden of adducing "clear evidence" that NPS engaged in fraudulent activity.  <u>See Coppola v. Charles Schwab & Co.</u>, 1991 U.S. Dist. LEXIS 12282, at *12 (S.D.N.Y. Sept. 4, 1991).  <u>See also Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.</u>, 791 F.2d 1334, 1339 (9th Cir. 1986) (holding that fraud must be proven by "clear and convincing" evidence).

Here, Procaps cannot satisfy any of these three tests.  First, Procaps has not presented (and cannot present) any evidence – let alone "clear evidence" – that NPS' financial statements were fraudulent.  NPS has vehemently denied these allegations and has brought its own affirmative claims against KEE Action Sports Holdings, Inc., et al. ("KEE").  Procaps' bald assertions, stated merely "upon information and belief," that NPS' financial statements were "fraudulent" because a third party has alleged as much in a separate still pending lawsuit cannot take the place of actual evidence of fraud.  <u>See Polin v. Kellwood Co.</u>, 103 F.Supp.2d 238, 257-

58 (S.D.N.Y. 2000) (rejecting petitioner's contention that an arbitration award should be vacated on account of having been procured by fraud, reasoning that petitioner "failed to present . . . to this Court any evidence to support his contentions" that respondent had falsified financial information).

Second, even if Procaps could adduce clear evidence of NPS' fraud, Procaps cannot demonstrate that the alleged fraud was, in fact, actually material to the arbitrators' award of lost profits to NPS or to any other issue in dispute between the parties in the arbitration. Procaps argues only that the fraudulent financial statements formed the basis for NPS' damages expert's lost profits calculations which, in turn, formed the basis for the arbitrators' award of lost profits to NPS. The specific allegation of fraud that Procaps cites in the Complaint filed by KEE against NPS is KEE's allegation that NPS' financial statements purportedly included "intentional misrepresentations regarding *product inventories and undisclosed liabilities*."[32] However, Procaps fails to explain how, even if NPS' financial statements included intentional misrepresentations regarding product inventories and undisclosed liabilities, any such misrepresentations actually affected the arbitrators' Final Award. In fact, NPS' expert's lost profits calculations (which formed the basis for the arbitrators' award of lost profits to NPS), were *not* based on any conclusions about NPS' product inventories and/or liabilities. Rather, NPS' expert's lost profits calculations were based on a calculation of the decline in NPS' *sales*, as well as price erosion on the sales NPS actually made, following Procaps' termination of the Contracts.[33]

---

[32] See Petition at ¶ 25. See also Pockers Aff. at Exh. "T", ¶ 6.

[33] See Pockers Aff. at Exh. "P", pp. 29-33.

18

Third, Procaps has adduced no evidence that the alleged fraud could not have been discovered before or during the arbitration proceeding through the exercise of due diligence. The parties exchanged extensive document discovery in advance of the hearings.  Procaps retained an expert who was provided with access to the documents produced by NPS in the proceeding and who submitted a detailed report, and thereafter provided testimony, setting forth the bases for his conclusion that NPS' expert's lost profits calculations were unreliable.[34] Therefore, even assuming, *arguendo*, that NPS' financial statements contained the allegedly fraudulent information claimed by Procaps and that such information formed the basis for NPS' expert's lost profits calculations, Procaps has failed to demonstrate that the alleged fraud could not have been discovered before or during the arbitration hearing.  See Lafarge, 791 F.2d at 1339 (holding that petitioner's failure to subpoena witness in arbitration proceeding who would have testified that respondent falsified documents "vitiates [the petitioner's] claim that the alleged fraud was not discoverable by due diligence").

## V.    CONCLUSION

For the foregoing reasons, NPS respectfully requests that this Court confirm the Final Award rendered against Procaps on April 26, 2007, deny Procaps' Petition to Vacate the same, and enter the Final Award as a judgment against Procaps as follows:

> a.    Judgment in favor of PBS Holding Group, Inc. (f/k/a National Paintball Supply, Inc.) and against Procaps, L.P. (f/k/a Paintball, L.P.) in the amount of $9,674,443.46 plus simple annual interest at the rate of 9% on any unpaid portion of that amount from June 1, 2007 until paid in full, as set forth in the Final Arbitration Award dated April 26, 2007;

> b.    An award of the attorneys' fees and costs incurred by Respondent in connection with this Opposition and Cross-Petition;

---

[34] See Pockers Aff. at Exhs. "Q" and "R".

c.    Post-judgment interest on the above amounts; and

d.    Such other relief as the Court may deem appropriate.

Respectfully submitted,

_____/s/_____

J Michael Lewis, Esquire
Federal Bar No: JL8893
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086

*Attorneys for Respondent*
*PBS Holdings Group, Inc.*
*(f/k/a National Paintball Supply, Inc.)*

OF COUNSEL:
Patrick J. Loftus, Esquire
Robert E. Kelly, Esquire
Lawrence H. Pockers, Esquire
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196

*Attorneys for Respondent*
*PBS Holdings Group, Inc.*
*(f/k/a National Paintball Supply, Inc.)*

DM1\1173383.3